Micek and another, Appellants, vs. Wamka and husband, Respondents.

*January 16—February 13, 1917.*

*Trial: Amending complaint to conform to proofs: Variance: Nonsuit: Contracts for benefit of third person: Rescission: Exchange of lands: Brokers: Commissions.*

1. Under secs. 2830, 2836b, Stats., the trial court should permit an amendment of the complaint to conform to the proofs, even though leave to amend is not asked until after the court has announced its decision granting a nonsuit. A variance between the proofs and the allegations of the complaint should be disregarded, and no litigant should be sent out of court where the facts established by the evidence show that he has a just claim.

2. If a person makes a contract with another for the benefit of a third person such third person may enforce it whether or not he has formally assented thereto, and neither one nor both of the immediate parties can rescind the contract or in any way interrupt or prejudice the rights of the third person without his consent, unless the right to do so be reserved in the contract.

3. Thus, where a contract for an exchange of lands provided that each party thereto was to pay as a brokerage fee to certain brokers a specified sum "at the time of the closing of the said exchange," and that all deeds were "to be passed and this negotiation to be closed within fifteen days from the date of this agreement," the parties to such contract could not by rescinding it or refusing to carry it out affect the right of the brokers to receive such fees at the expiration of the fifteen days mentioned.

Appeal from a judgment of the circuit court for Brown county: Henry Graass, Circuit Judge. *Reversed.*

Action by real-estate brokers to recover commission. Plaintiffs sued to recover from the defendants the sum of $300, which they claim as a commission for the sale or disposition of defendants' farm. At the close of defendants' testimony the court granted their motion for nonsuit and judgment was rendered and entered dismissing plaintiffs' complaint.

After alleging that plaintiffs were copartners engaged in the real-estate brokerage business the complaint sets forth

"that on or about the 15th day of April, A. D. 1913, the above named defendants employed the above named plaintiffs to find them a purchaser or trade for their farm and personal property located in the town of Bellevue, Brown county, Wisconsin, satisfactory to the defendants, and that in the event that the plaintiffs found a purchaser, or were the procuring cause in getting either a trade or sale of the farm and personal property thereon, or instrumental in any way in finding such purchaser, the plaintiffs were to receive as their commission the sum of $300.

"That the above named plaintiffs did actually procure a purchaser who was ready, willing, and able to buy and take said personal property at a price satisfactory to the defendants, and on the 5th day of May, A. D. 1913, a written contract was entered into wherein and whereby the said defendants agreed to convey to one James Wilson the property owned by the defendants, and in consideration thereof the said James Wilson was to convey certain property which he owned in the city of Chicago, and assume the mortgage on the farm owned by the defendants, all of the terms of which contract was reduced to writing and signed by the defendants and the said James Wilson, deeds to be executed within fifteen days from the date of said contract; and it was further agreed in and by said contract so reduced in writing that the defendants were to pay to the plaintiffs the sum of $300 for their commission in closing said deal and in finding a buyer as hereinbefore stated.

"That the plaintiffs have performed all the terms and conditions on their part to be performed under said agreement with the defendants to find them a purchaser and are entitled to the sum of $300 commission, which the defendants now refuse to pay, although often demanded."

Defendants answered admitting that the plaintiffs were copartners, and generally denied the allegations of the complaint excepting as specifically admitted:

"Defendants admit that on May 5th they entered into a certain agreement in writing with one James Wilson for the exchange of certain properties, which properties were described in said written contract, but defendants allege that

in and by the terms of said written contract it was stipulated and agreed that the plaintiffs herein were to receive no commission unless the exchange of properties described in said contract was actually made, and defendants allege the fact to be that the exchange of properties provided for in said written contract was never made and that they are in no manner or in any sum whatsoever indebted to plaintiffs herein."

The case was tried by the court and a jury. Upon the trial plaintiffs offered evidence tending to show that they had been employed by defendants as real-estate brokers; that in pursuance of such employment they procured a purchaser for the farm owned by defendants; that after some negotiations a contract of exchange was entered into between the defendants and the purchaser produced by the plaintiffs, which contract was executed by the defendants and the purchaser and delivered. The contract was a carefully prepared document dated May 5, 1913, described in detail the property which was to be exchanged by the defendants with the purchaser, James Wilson, provided for an exchange of abstracts within ten days from the date of the contract, and that each party should pay his own commission, attorney's fees, and all other costs incident to the negotiations, and contained the following clause in regard to brokerage fees:

"Brokerage fees to be paid as follows, to wit: Party of the first part to pay Micek & Co. three hundred dollars ($300). Party of the second part to pay Micek & Co. two hundred dollars ($200), and to be paid at the time of the closing of the said exchange. This contract to be held in escrow by Micek & Co. for the mutual benefit of the parties hereto.

"All deeds to be passed and this negotiation to be closed within fifteen days from the date of this agreement. Time is hereby declared to be of the essence of this agreement."

From the testimony it appeared that after the contract of exchange had been made a barn situated upon the premises owned by the defendants burned, and for some reason, which does not clearly appear, the defendants refused to carry out their contract with the purchaser, Wilson, it being intimated

that they refused to do so because the plaintiffs would not re-
duce the amount of commission to be paid them.    Plaintiffs
then rested and defendants moved for a nonsuit.    In fair-
ness to the trial court we reproduce here, in substance, pro-
ceedings which then took place as shown by the record:

The court inquired of plaintiffs' counsel if he stood upon
the contract of May 5th, and counsel stated that he did not
rely upon it at all.    The court then inquired of plaintiffs'
counsel if he proposed to stand upon a verbal or oral contract
prior to the contract of May 5th, and in response counsel
stated that he did.    There was further colloquy between the
court and counsel on both sides, and counsel for plaintiffs
then asked leave of the court to introduce further testimony
tending to establish the oral contract.    To this defendants'
counsel objected.    Without waiting to have a determination
of the matter plaintiffs' counsel then changed his position
and stated that he would rely upon the written contract, re-
ferring to the contract of May 5th, and that upon that he de-
sired to put in no more testimony.    Apparently the court
then took a recess until 2 p. m. to consider the matter, and in
disposing of it said:

"The record now shows that plaintiff relied upon an oral
contract made April 15, 1913, between the parties to this
action.    He abandoned his complaint and now relies upon a
written agreement, and has not attempted to amend his com-
plaint so as to make that written agreement his cause of ac-
tion, and upon the record of the case and the pleadings as
they now stand, and the plaintiff not having asked to amend
his complaint to substitute the new cause of action, the mo-
tion of the defendants is granted."

Counsel for plaintiffs then asked leave to introduce fur-
ther testimony to substantiate the cause of action upon the
oral agreement and for leave to amend the complaint to com-
ply with the proof, and also asked to be relieved from the
statement which he made in open court that he relied en-
tirely upon the written agreement.    To this counsel for de-

fendants objected.   In passing upon the motion of plaintiffs
the court said:

"If plaintiff's motion had been made before the decision
had been announced, there is no question but what he would
have considered it, but in view of the fact that his decision
has been announced in presence of the jury and all jurors
serving, and the court feeling that the plaintiff by a nonsuit
still has any cause of action he may have preserved to him,
his motion at this time will be denied."

Judgment was entered dismissing plaintiffs' complaint,
from which judgment plaintiffs appeal.

The cause was submitted for the appellants on the brief of
*P. J. Winter* of Shawano, and for the respondents on that of
*Martin, Martin & Martin* of Green Bay.


Rosenberry, J.   Under the former practice the trial
court no doubt correctly granted defendants' motion for a
nonsuit.   Under the provisions of secs. 2830 and 2836*b,*
Stats., we think it was clearly the duty of the trial court to
have permitted an amendment to the complaint to conform to
the proofs and to have disregarded any variance between the
proofs and the allegations of the complaint.   As was said in
*Klaus v. Klaus,* 162 Wis. 549, 156 N. W. 963, "The objec-
tion that the evidence and allegations of the complaint are
at variance is of no merit."

In justice to the judge who presided, we must say that an
examination of the record shows that he is chargeable with
no blame in the matter; that plaintiffs were in court without
a consistent legal theory, and that plaintiffs' counsel changed
his position three times in an apparent effort to have the
court try plaintiffs' case.   The court's attention was not
called to the statute in question and no authorities were cited
so far as the record shows.   The burden of administering
justice cannot be thrown entirely upon trial courts; they
have a right to expect and to receive the aid of counsel.
Notwithstanding, we think the law is plain and that no liti-

gant should be sent out of court where facts established by the evidence show that he has a just claim.

Inasmuch as the construction of the clause of the contract relating to the payment of brokerage fees has been fully argued and submitted and inasmuch as there must be a new trial of this case, we think it our duty to construe the contract of May 5th. Since *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440, it is the settled law of this state that if a person makes a contract with another for the benefit of a third person the latter may enforce it whether or not he has formally assented thereto, and that, such a contract having been made, neither one nor both of the immediate parties to the transaction can rescind the same or in any way interrupt or prejudice the rights of the third party without his consent, unless the right to do so be reserved in the contract.

The contract of May 5th provides: "The party of the first part to pay Micek & Co. [plaintiffs] three hundred dollars ($300). Party of the second part to pay Micek & Co. two hundred dollars ($200), and to be paid at the time of the closing of the said exchange." It then provided: "All deeds to be passed and this negotiation to be closed within fifteen days from the date of this agreement."

It was beyond the power of the parties to the contract of May 5th to impair or interrupt in any way the rights of the plaintiffs under the provisions of this contract. So far as the plaintiffs are concerned the contract was closed when the fifteen days had expired, and it would have been closed sooner if the exchange had been made sooner. Any attempt by the defendants and the purchaser, Wilson, to rescind the contract, or their refusal to carry it out for any reason whatever, cannot affect the rights of the plaintiffs. The contract specifies that the money shall be paid when the exchange is closed, and specifies the time with exactness for the closing of the exchange.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.