DUFFY, Respondent, vs. SCOTT, Appellant.

*May 9—June 4, 1940.*

For the appellant there was a brief by *Powell & Sprowls* of Superior, and oral argument by *John S. Sprowls.*

For the respondent there was a brief by *Crawford & Crawford* of Superior, and oral argument by *R. A. Crawford.*

FOWLER, J. The defendant is a sole trader residing in Cleveland, Ohio, and conducts a branch business at Duluth, Minnesota, under the name of K. A. Scott & Company. Sidney Wick was his managing agent of the Duluth branch. Wick represented to the plaintiff Duffy that he needed $2,500 for Scott's business. Duffy delivered $10,000 par value of bonds to Wick and signed a note with Wick on which Wick secured a loan from the First American National Bank of Duluth and put up the bonds as collateral. The bank sold the bonds and applied the proceeds on the note. Wick had absconded in the meantime, having embezzled large sums from Scott. The plaintiff paid the bank $1,492 in satisfaction of the note. Judgment went against the defendant for this sum with interest. The money was not paid by the bank to Wick, but was entered by the bank directly to the credit of Scott in the latter's bank account. The plaintiff understood the $2,500 would be so credited when he signed the note, and signed it in reliance on Scott's responsibility and would not have signed it on the responsibility of Wick. The note was dated January 28, 1932, and Scott received a check for $2,635.38, drawn on Scott's account, signed by Scott & Company by Wick and payable to Scott, which Scott received and deposited to his account in his Cleveland bank. The check was paid by the Duluth bank on February 1, 1932. At the time the money was deposited by the bank in Scott's account Wick delivered to the plaintiff an instrument signed "K. A. Scott & Company by Sidney Wick," reciting as follows:

"Received from Jas. Duffy as a loan the undernoted bonds to be returned within ninety days, free and clear of all in-

cumbrances with all coupons attached except those not due as of this date [the bonds referred to]. The above bonds are being used as collateral at the First and American National Bank for the loan of $2,500, made as of this date, note signed by Sidney Wick and Jas. Duffy."

The plaintiff sued Scott for conversion of the bonds by failing to return them within ninety days as agreed in the receipt above quoted. The case went to trial to the court and a jury. At the close of the evidence the defendant moved for a directed verdict. The trial judge stated that he thought the evidence showed that Wick had no express authority to borrow money in the name of Scott, and was of opinion that the evidence would not support a finding of apparent authority, but that to avoid possible necessity for a new trial he would submit a question to the jury. He thereupon submitted to the jury a question inquiring whether Wick had "apparent authority to borrow money in the name of and on the credit of defendant, Scott, for use in Scott's business." This question was answered "Yes" by the jury. Neither party requested submission to the jury of any other question.

On motions after verdict, the court filed an opinion pursuant to which he set aside the jury's answer to the question, and held that the plaintiff could not recover on the contract set forth in the complaint. But the court held that the plaintiff was entitled to recover for money had and received because Scott received the money loaned on the note of Wick and the plaintiff and entered judgment accordingly. The court considered that as the evidence showed that Scott received the $2,500 loaned, the complaint should be deemed amended to state a cause of action for money had and received.

The defendant claims that he did not anticipate the decision of the court on the theory of money had and received, and that had he known that judgment might be entered for money had and received, he could have defended on that theory and perhaps have produced evidence that the defend-

ant did not in fact receive the avails of the loan. If so he should have moved for a new trial on the ground of surprise, or on the ground of newly discovered evidence if he found any such evidence. But no such motion was made. The defendant had ample opportunity to make either such motion, because after announcing his decision the trial judge gave defendant a hearing as to the correctness of his position. The defendant did file a motion for a new trial on the specific grounds of erroneous receipt and exclusion of evidence; error in instructing the jury; in submitting to the jury the question that was submitted; because the *verdict* was contrary to law, and perverse, and the result of passion and prejudice; and in the interest of justice. No errors respecting receipt or rejection of evidence are pointed out. The objections relating to the verdict all fall by the setting aside of the verdict. This only leaves the ground "in the interest of justice" as basis for the motion for a new trial. The court considered that the evidence showed that the defendant received the avails of the $2,500 loan. The evidence supports that view. If that fact, together with the manifest fact that the defendant would not have paid the money to plaintiff had the plaintiff demanded it, makes a case for money had and received, the only way in which it could be made to appear that the interest of justice requires a new trial would be to show existence of facts not in evidence that would show nonreceipt of the money by the defendant, which through surprise the defendant did not produce upon the trial, and no such facts are suggested. Had any such facts existed, counsel would no doubt have so shown, and the court would no doubt have granted a new trial to permit them to be shown. We therefore consider that the defendant is not entitled to a new trial on the ground of surprise, and he certainly is not entitled to a new trial on the ground of newly discovered evidence without showing that such evidence exists. It thus appears that the only infirmity of the judgment, if it has any, of which the

defendant can avail himself, is that the fact that the defendant received the $2,500 and denies liability to return it does not constitute a cause of action for money had and received.

All the evidence respecting the state of Scott's account was received without objection. The $2,500 raised on the note was deposited January 28, 1932, and $2,635.38 was drawn out February 1, 1932. Scott testified he received the $2,635.38 check and got cash for the amount of it. Wick had to transmit annually the profits of the year. The season closed prior to the time of the transaction. The check was for the amount of the balance of the profits of 1931. It also appeared without dispute that the plaintiff demanded from the defendant payment, but whether for the value of the bonds, the amount the defendant received on the check, or the amount the plaintiff paid on the note, does not appear.

Where a good cause of action appears from proofs received without objection, a variance between the allegations of the complaint and the evidence is not material. The pleadings may be taken as amended to conform to the proofs. *Klaus v. Klaus,* 162 Wis. 549, 553, 156 N. W. 963; *Micek v. Wamka,* 165 Wis. 97, 161 N. W. 367; *Wulfers v. E. W. Clark Motor Co.* 177 Wis. 497, 188 N. W. 652; *Bieri v. Fonger,* 139 Wis. 150, 120 N. W. 862; *Bruheim v. Stratton,* 145 Wis. 271, 129 N. W. 1092; *Krudwig v. Koepke,* 227 Wis. 1,.277 N. W. 670. The trial court as well as this court may treat the complaint as so amended. Sec. 263.31, Stats., which by its terms, strictly construed, would seem at first blush to require dismissal of the complaint, harks back to sec. 35, ch. 125, R. S. 1858. As pointed out in *Micek v. Wamka, supra,* p. 101, under the practice existing when this section was enacted, the variance would no doubt have been considered fatal and required entry of judgment for the defendant. But under the provisions of secs. 2830, R. S. 1898 (sec. 269.44, Stats. 1937) and 2836*b*, Stats. 1915 (sec. 269.52, Stats. 1937), and the cases above cited, the ruling of

the court considering the complaint amended to conform to the proofs was proper. As was said in *Klaus v. Klaus, supra,* under such circumstances as here exist, "The objection that the evidence and allegations of the complaint are at variance is of no merit." The section of the statutes last above mentioned was enacted in 1915, and in effect softens the rigor of sec. 263.31, and renders it inapplicable in cases where evidence received without objection and not denied and not claimed to be subject to refutation, constitutes a cause of action other than that stated in the complaint.

The defendant cites only one case as holding that the action for money had and received does not lie in the instant case, *Calhoun v. McCrory Piano & Realty Co.* 129 Tenn. 651, 168 S. W. 149. In this case Brown was agent for the defendant as a piano salesman. He borrowed $300 on a note of the defendant signed by himself. He had no authority to borrow for the defendant. He deposited the money received on the note in his own account, and remitted $300 to the defendant as a remittance of money collected on sales. The defendant was held not liable in a suit on the note. The decision went on the proposition that receipt of the money did not constitute a ratification of the loan because the defendant did not know of the borrowing. The question of recovery on the ground of unjust enrichment was not considered. This ruling conflicts with Rules 98 and 99, Restatement, Agency. Liability seems to be enforceable at election of the plaintiff either on the theory of ratification or of restitution. Restatement, Restitution, p. 66.

The plaintiff cites *Leonard v. Burlington Mutual Loan Asso.* 55 Iowa, 594, 8 N. W. 93 (463), in support of the judgment. In that case the plaintiff paid money to an agent of the defendant supposing he was loaning it to the defendant. The agent deposited part of the money in his own name and part in the defendant's account. All that he deposited in his own name he sent to the defendant. The agent was a defaulter. Judgment was awarded against the defendant for

the part deposited in the defendant's account as money had and received.

The plaintiff also cites *Fay v. Slaughter,* 194 Ill. 157, 62 N. E. 592. In that case a clerk authorized to indorse and deposit checks to defendant's account, without power to sell stock, was a defaulter. He forged assignments of stock certificates and sold the certificates to the plaintiff. The defendant was held not liable to the plaintiff for the amount the stock was sold for, but was held liable for a part of the money received for the stock which was used by the clerk to balance his prior embezzlements. In the instant case the $2,500 borrowed by Wick went toward balancing his prior embezzlements.

Many decisions of this court have gone on the general proposition that action for money had and received lies whenever one person has received money of another which in equity and good conscience he ought not to keep. *Ela v. American Merchants' Union Express Co.* 29 Wis. 611; *Blewett v. McRae,* 88 Wis. 280, 60 N. W. 258; *Marine Co. v. Milwaukee,* 151 Wis. 239, 138 N. W. 640; *Siggins v. Chicago & N. W. R. Co.* 153 Wis. 122, 140 N. W. 1128; *J. V. LeClair Co. v. Rogers-Ruger Co.* 124 Wis. 44, 102 N. W. 346; *Steuerwald v. Richter,* 158 Wis. 597, 149 N. W. 692; *Glendale Investment Asso. v. Harvey Land Co.* 114 Wis. 408, 90 N. W. 456. None of these cases involve a factual situation closely resembling the instant case.

Going to the Restatement, Restitution, we find general statements supporting the instant judgment. Sec. 1, "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Comment *c* under the above implies that where a person receives a benefit from another he is liable to pay therefor if the circumstances of its receipt or retention are such that as between the two it is unjust for him to retain it. One of the grounds on which the doctrine of restitution is based is that when one person confers a benefit on another through mistake, whether of fact

or law, the other is liable to make restitution. By sec. 6 "Mistake [of fact] means a state of mind not in accord with the facts." Sec. 15 deals with money paid under "Mistaken Belief in Existence of Contract with Payee." Illustration 8, under this section, p. 67, is as follows:

"A, the local agent of P, authorized to receive payment of accounts receivable but not to borrow money, borrows from T $1,000 on P's account and deposits it to P's credit in the bank in which P has an account. Not knowing the source of the money, P withdraws it from the bank. T is entitled to restitution from P."

Transposing this illustration to the instant case we have Wick in effect borrowing from plaintiff $2,500 on Scott's account and depositing it to Scott's credit in the bank where Scott has an account. Not knowing the source of the money, Scott withdraws it from the bank. The plaintiff is entitled to restitution from Scott. We perceive no difference in the effect of the transaction whether Scott drew the withdrawal check himself or Wick drew such check payable to Scott and Scott received the cash or credit on the check through indorsing it to another bank. The mechanics of the transaction are different but the result is the same.

In the reporters' notes attached to the Restatement, Restitution, in connection with sec. 15, is a list of cases cited where money was paid in a mistaken belief as to the authority of an agent, as result of which the principal either received the money or the money was used for his benefit. Of these the following involve factual situations somewhat similar to that of the instant case: A. by false representation procured a check from B. and used it to pay his own debt to C. C. was held liable to B. *R. E. Jones v. Waring & Gillow* (House of Lords, 1926), Appeal Cases, 670. An agent procured funds without authority. The funds were used for purposes of the principal. The principal repudiating the transaction was held liable for money had and received. *Whitwell v. Warner*, 20 Vt. 425. An agent procured funds from a bank on a

guaranty he had no authority to execute. The funds were placed to the credit of the principal. The principal having drawn out part of the funds could not repudiate the transaction without restoring the funds drawn out. *First National Bank v. Oberne,* 121 Ill. 25, 7 N. E. 85.

To make the doctrine of restitution applicable it is not necessary that the recipient be guilty of tortious conduct or at fault himself. Sec. 155, Restatement, Restitution, covers cases where a person is entitled to restitution from another where the other without tortious conduct receives a benefit. Comment *a,* p. 612, under this section states that the rule of the section applies where there was no tortious conduct on the part of the recipient, and where the *claimant* was at fault and the recipient was not. "Fault," as used in this comment, covers failure to use care to ascertain relevant facts, p. 573. Thus, if the plaintiff was negligent in not ascertaining the authority of Wick to borrow money for the defendant, and the defendant was not at fault in depositing the check by which Wick had transmitted the money procured by using plaintiff's bonds as collateral, the defendant became liable to make restitution.

Upon general principles, as well as upon the cases above cited, we hold that on the evidence before the trial court its judgment was correct.

The plaintiff urges that the court erred in changing the answer of the jury to the question submitted to them and that upon the jury's answer he was entitled to judgment. If this be so, a point which we do not consider, the plaintiff's judgment would be for the value of the bonds when defendant breached the contract to return them, which was greater than the amount of the judgment. But the plaintiff did not appeal and has not filed a motion for review so that if his position were sustained it would avail him nothing.

*By the Court.*—The judgment of the circuit court is affirmed.